UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA COLEMAN,<br><br>                Petitioner,<br><br>        vs.<br><br>GWENDOLYN MITCHELL, Warden,<br><br>                Respondent. | No. 1:02-cv-06282-JKS<br><br>MEMORANDUM DECISION |

Dona Coleman has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is currently serving a term of 25 years to life plus a one year enhancement at the Central California Women's Facility, Chowchilla, California.  Petitioner was convicted of first degree murder, CAL. PEN. CODE § 187, and being vicariously armed with a handgun, CAL. PEN. CODE § 12022.[1]  Petitioner appealed her conviction to the California Court of Appeal, which affirmed in a written unpublished decision on April 26, 2001.  The California Supreme Court summarily denied review on July 25, 2001, and since she did not petition the U.S. Supreme Court for *certiorari* her conviction became final 90 days later, October 23, 2001.  *See Wixom v Washington*, 264 F.3d 894, 897 (9th Cir.2001).   Petitioner timely filed her petition for habeas corpus in this Court on October 16, 2002.[2]

The history of this case and the facts are well known to the parties and are set forth in detail in the opinion of the California Court of Appeals.  In the interests of brevity they are not repeated here.

---

[1] Petitioner's co-defendant and son was also convicted of first degree murder and of using a firearm causing great bodily injury, CAL. PEN. CODE § 12022.53.

[2] The petition bears a file stamp date of October 21, 2002.  However, the petition bears a signature date of October 16, 2002.  Under the "mailbox rule," in the absence of evidence to the contrary, the Court assumes the petition was delivered to the prison authorities on the date it bears and treats the petition as having been filed as of that date.

Petitioner raises four claims in her petition.  Claim 1: Error in instructing on the elements of aiding and abetting.  Claim 2: Improper instruction on the lesser included offense of voluntary manslaughter and failure to instruct on a lesser included offense of involuntary manslaughter. Claim 3: Erroneous instruction permitting conviction on a standard of less than beyond a reasonable doubt.  Claim 4: Petitioner's due process rights were violated when she was shackled before the jury.  All claims were properly presented to and decided by the California Court of Appeal on direct appeal.  Petitioner did not seek post-conviction relief in the California courts.

Because Petitioner filed her petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).  In applying this standard, this Court reviews the last reasoned decision by the state court, *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir.2004), which in this case was that of the California Court of Appeal on the direct appeal.  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003).  To the extent that Petitioner alleges errors of state law, they are beyond the purview of this Court in deciding a petition for federal habeas corpus relief.  This Court may only address violations of federal law. 28 U.S.C. § 2254(d); *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (Citations and internal quotation marks omitted)).

Claim 1 (Error in instructing on aiding and abetting).

A no time has the State contended that Petitioner was the "shooter."  She was convicted as one who aided and abetted the crime. The gravamen of Petitioner's argument is that the

instruction as given permitted the jury to convict her of aiding and abetting the crime even though her conduct did fall within the scope of the aiding and abetting statute.  Most specifically, that " the law is clear that a jury must be instructed that the requisite acts and mental state required for aiding and abetting must exist prior to or during the perpetrators commission of the crime" and "[n]o such evidence supports the theory that petitioner possessed the requisite mental state for aiding and abetting the crime."  Respondent's position is essentially that "considered in the context of the instructions as a whole, there is no reasonable likelihood that the jury understood the aiding and abetting instruction to permit the type of erroneous conclusion that Petitioner suggests."

In rejecting Petitioner's arguments, the California Court of Appeal held (footnote in the original):

## CALJIC No. 3.01

Aiding and abetting was defined to the jury as follows: "A person aids and abets the commission of a crime when he or she, [¶] 1. With knowledge of the unlawful purpose of the perpetrator and [¶] 2. With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] 3. By act or advice aids, promotes, encourages or instigates the commission of the crime. [¶] Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting. [¶] Mere knowedge [*sic*] that a crime is being committed and the failure to prevent it does not amount to aiding and abetting."

Coleman asserts the trial court had a sua sponte duty to instruct the jury that if it found her act or conduct, or her specific intent to aid and abet, arose after Loera inflicted the fatal wound, she could not be convicted of murder as an aider and abettor. Coleman contends the instruction permitted the jury to find her guilty based on aiding and abetting that occurred after the fatal wound had been inflicted. Coleman argues there was ample opportunity for the jury to have relied on acts occurring after the fatal wound was inflicted to find her liable, including driving the getaway car after the shooting, telling Loera to take a shower when they got home, and disposing of the weapon.

In *People* v. *Williams* (1997) 16 Cal.4th 635, the defendant was convicted of four counts of first degree murder. One of the defendant's claims on appeal was that the aiding and abetting instruction "did not clarify that the intent of an aider and abettor must be formed before or during the actual offense and not after." (*Id.* at p. 675.) The California Supreme Court found no ambiguity.

The *Williams* court evaluated the instructions as a whole, noting that the following instructions were given to the jury.

"[T]he trial court instructed the jury that in each of the charged crimes of murder 'there must exist a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator and unless such specific intent exists the crime to which it relates is not committed.' (CALJIC No. 3.31 (rev. 1980).) The court also instructed that the intent necessary for murder was 'malice aforethought' (CALJIC No. 8.10 (rev. 1984)), that 'aforethought' meant that 'the required mental state must precede rather than follow the act' (CALJIC No. 8.1 1.2 (1983 rev.)), that all murder 'perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought is murder in the first degree' and that "'premeditated means considered beforehand' (CALJIC No. 8.20.1 (1979 rev.)). The instruction on first degree murder further provided: 'If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder in the first degree.' (*Ibid.*)" (*People v. Williams, supra*, 16 Cal.4th at p. 675.)

The Supreme Court concluded: "Considered together, these instructions told the jury that an aider and abettor who shares the actual perpetrator's intent to kill must have formed that intent beforehand." (16 Cal.4th at p. 676.)

Coleman claims *Williams* is distinguishable because, although Williams committed his crimes with others, he was tried separately. Because Coleman was tried jointly with Loera, she asserts the jury would not necessarily have applied any of the ameliorative instructions relied on in *Williams* to her.

The jury here received instructions very similar to those received in *Williams*; Coleman does not dispute this. In order to find Coleman liable as an aider and abettor, the jury had to determine if she acted with knowledge of the purpose of the perpetrator and acted with the intent of furthering that purpose. Thus, the jury here would have had to consider the instructions relied on in *Williams* regarding the actual shooter's mental state in arriving at their verdict for Coleman. The fact that Coleman was tried jointly with Loera does not distinguish *Williams* in any significant way.

Furthermore, the aiding and abetting instruction by itself is sufficient to convey the concept that the intent of the aider and abettor must be formed before or during the actual offense and not after.[6] For a defendant to be found guilty on an aiding and abetting theory, the intent to encourage or facilitate the actions of the perpetrator must be formed by the defendant prior to or during the commission of the offense. (*People v. Montoya* (1994) 7 Cal.4th 1027, 1039.)

---

[6] *Williams* did not determine if the instruction by itself would be sufficient.

---

The Supreme Court in *People v. Cooper* (1991) 53 Cal.3d 1158 was called upon to determine "the duration of the commission of a robbery for purposes of determining whether a getaway driver is liable as an aider and abettor rather than an accessory." (*Id.* at pp. 1160-1161.) The *Cooper* court looked to the nature of the elements of the crime and the interests the law seeks to protect in defining the offense. The *Cooper* court made clear that the commission of a crime is not always synonymous with that point in time when all the elements of the offense have been satisfied. Robbery has two elements: gaining possession of the victim's property and asporting or carrying it away. Although slight movement would satisfy the asportation requirement, the asportation can continue as long as the property is being carried away to a place of temporary safety. (*Id.* at pp. 1164-1165.)

The Supreme Court utilized rape as an illustrative example of a crime where all the necessary elements of guilt have been established yet the commission of the crime continues.

"The logic of viewing 'committed' as a fixed point in time for purposes of guilt establishment and 'commission' as a temporal continuum for purposes of determining accomplice liability can be seen from the perspectives of both the victim and the accomplice. The rape victim, for example, would not agree that the crime was completed once the crime was initially committed (i.e., at the point of initial penetration). Rather, the offense does not end until all of the acts that constitute the rape have ceased. Furthermore, the unknowing defendant who happens on the scene of a rape after the rape has been initially *committed* and aids the perpetrator in the continuing criminal acts is an accomplice under this concept of 'commission,' because he formed his intent to facilitate the commission of the rape *during its commission*." (*People v. Cooper, supra*, 53 Cal.3d at pp. 1164-1165, fn. 7.)

The Supreme Court in *People v. Montoya, supra*, 7 Cal.4th 1027 faced a question similar to the question in *Cooper*, but the crime involved was burglary. The question posed to the *Montoya* court was "to decide at precisely what point—the perpetrator's entry into the structure, his or her departure from the structure, or some other point—the acts constituting the crime of burglary terminate for the purpose of aiding and abetting." (*Id.* at p. 1041.) The Montoya court concluded that for the purpose of aider and abettor liability for a burglary, the liability extends until the perpetrator departs from the structure. (*Id.* at pp. 1046-1047.)

In both *Cooper* and *Montoya*, there were questions raised by the nature of the crime regarding when the crime is ongoing for purposes of aider and abettor

liability. With the crime here, murder, there is no question when the commission of the crime has ended. Meza was shot in the head, he fell fatally wounded to the pavement with brain matter coming out of his head; the commission of the murder had ended. "It is legally and logically impossible to both form the requisite intent and in fact aid, promote, encourage, or facilitate commission of a crime after the commission of that crime has ended." (*People v. Cooper, supra,* 53 Cal.3d at p. 1164.) That a murder has ended is not a question burdened with legal intricacies as is the case of robbery or burglary; it is a clear-cut, logical crime ending, requiring no explanation. As previously set forth, the instructions as given required the jury to find Coleman had "knowledge of the unlawful purpose of the perpetrator and ... [with the intent or purpose of committing or encouraging or facilitating the commission of the crime, and ... [b]y act or advice aids, promotes, encourages or instigates the commission of the crime."

The instructions as given made clear that to be guilty as an aider and abettor Coleman's mental state and/or acts had to precede or occur during the commission of the murder. The murder was clearly over when Meza fell to the ground. Contrary to Coleman's arguments, the instructions did not allow the jury to find Coleman to be an aider and abettor of murder based on a mental state and/or actions that occurred after the commission of the murder was complete.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law. *See Jackson*, 443 U.S. 307, 324 n. 16 (1979). The Court accepts, as it must, the California Supreme Court's identification of the elements of the offense. *See Illinois v. Vitale,* 447 U.S. 410, 416(1980); *Newton v. Superior Court of California*, 803 F.2d 1051, 1058 (9th Cir.1986).

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California,* 494 U.S. 370, 380 (1990). The question is whether the instruction, when read in the context of the jury charges as a whole, are sufficiently erroneous to violate the Fourteenth Amendment. *Francis v. Franklin*, 471 U.S. 307, 309 (1985). This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Francis v. Franklin*, 471 U.S. at 324 n. 9 (1985).

Petitioner cites several federal appellate court decisions that tend, at least superficially, to support her view that a jury must be expressly instructed that the requisite acts must occur and the intent performed prior to the criminal act of which the defendant is accused of aiding and abetting.  Unfortunately, the common thread of these cases concerns the proper application of the federal aiding and abetting statute, not a state statute.  To the extent that it has spoken on the subject, the Supreme Court has indicated that due process—independent of state law—does not require that an aiding and abetting charge contain a distinct instruction regarding specific intent.  In *Nye & Nissen v. United States,* 336 U.S. 613 (1949), the Supreme Court upheld a conviction under the *federal* aiding and abetting statute.  The Court found no error in the trial court's charge that one "'who aids, abets, counsels, commands, induces, or procures the commission of an act is as responsible for that act as if he committed it directly,'" *id.* at 618, even though the jurors were given no further explanation of the terms involved, *see id.* at 628 (Murphy, J., dissenting).  The *Nye & Nissen* Court was satisfied that the "defendant 'in some sort associate[d] himself with the venture, that he participate[d] in it as in something that he wishe[d] to bring about, that he [sought] by his action to make it succeed.'" *Id.* at 619.  The Ninth Circuit, in upholding a prior version of CALJIC 3.01, which was invalidated by the California Supreme Court in *People v. Beeman*, 674 P.2d 1318, 1325 (1984) because it permitted conviction based upon mere knowledge of the wrongful purpose instead of an actual intent to facilitate the criminal conduct, held that a *Beeman* error did not violate the due process clause of the Fourteenth Amendment.  *Willard v. California*, 812 F.2d 461, 463 (9th Cir.1987); *see also Leavitt v. Vasquez*, 875 F.2d 260, 261 (9th Cir.1989) (following *Willard*).

In light of the Supreme Court decision in *Nye & Nissen* and the Ninth Circuit Decisions in *Willard* and *Leavitt*, this Court can not say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Nor can this Court find that the California Court of Appeal unreasonably applied the correct legal principle to the facts of the prisoner's case as required by *Lockyer–Williams*; *i.e*., the state court decision was more than incorrect or erroneous, its

application of clearly established law was objectively unreasonable.  Petitioner is not entitled to relief under Claim 1.

Claim 2 (Improper Voluntary manslaughter instruction and failure to instruct on involuntary manslaughter).

Petitioner contends that failure to instruct the jury on involuntary manslaughter and giving an erroneous voluntary manslaughter instruction constituted a denial of due process. Respondent argues that it was not error to omit the involuntary manslaughter instruction and the error in the voluntary manslaughter instruction was harmless.  Moreover, Respondent contends that the claimed errors do not present a proper federal question in a habeas proceeding.

In disposing of those claims, the California Court of Appeal held:

**Failure to Instruct on Unlawful Act Involuntary Manslaughter**

Coleman asserts the trial court erred in failing to instruct the jury on the lesser included offense of unlawful act involuntary manslaughter. She claims sufficient evidence was presented to support this theory. In particular, Coleman points to Barbosa's testimony that there were no discussions about killing Meza, Barbosa thought they were only going to scare Meza, and Brenda Patrick's testimony that Loera said he could not believe that Meza did not run. Coleman contends that in light of this evidence the jury might have found that defendants never harbored malice or intent to kill necessary for conviction of murder or manslaughter and, having rejected heat of passion, were left with an unwarranted choice between a murder verdict and outright acquittal.

During the jury instruction conference, the trial court indicated it did not find any evidence to support involuntary manslaughter instructions. The parties agreed with this assessment and counsel for Coleman stated he agreed the proof did not support giving the instruction; his agreement was not a matter of tactical decision.

Murder is the "unlawful killing of a human being ... with malice aforethought." (§ 187, subd. (a).) Malice may be express or implied. "It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature." (§ 188.) Express malice, when combined with premeditation and deliberation, can be utilized to support a first degree murder conviction. When express malice is present, but premeditation and deliberation are absent, the killing is second degree murder. Express malice is not the only theory to support a second degree murder conviction. Second degree murder can also be found when an intent to kill is lacking but implied malice is present. Implied malice may be found "from conduct that reflects an intent to do an act that is dangerous to human life." (*People* v. *Coddington* (2000) 23 Cal.4th 529,593.)

Manslaughter is a lesser included offense of murder. It is either voluntary or involuntary. (§ 192.) The jury here was given instructions on voluntary manslaughter based on a theory of heat of passion. Involuntary manslaughter occurs "in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." (§ 192.)

Coleman asserts that the trial court erred by failing to instruct the jury sua sponte on involuntary manslaughter, in particular on the unlawful act theory of involuntary manslaughter.

"A court is not obligated to instruct sua sponte on involuntary manslaughter as a lesser included offense unless there is substantial evidence, i.e., evidence from which a rational trier of fact could find beyond a reasonable doubt (see *People v. Wickersham* (1982) 32 Cal.3d 307, 325 ...) that the defendant killed his victim 'in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection' (Pen. Code, § 192, subd. (b))." (*People v. Berryman* (1993) 6 Cal.4th 1048, 1081, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800.) Speculation that the killing is perpetrated during an unspecified misdemeanor is not evidence, less still substantial evidence. (*Ibid.*)

There is no evidence in this case, other than speculation, from which the jury could conclude that Loera shot and killed Meza while he was committing a misdemeanor brandishing of firearm or a misdemeanor assault. There is nothing suggesting the shot was fired accidentally, was due to reckless handling of the gun, or occurred inadvertently during a scuffle, nor does Coleman posit any such scenario. Loera shot Meza in the back of the head from approximately two feet away. Although the evidence that Coleman presents as showing that the intent was only to scare Meza, when combined with the other evidence, might be susceptible to a finding of second degree murder, based on conduct that reflects an intent to do an act that is dangerous to human life without an intent to kill, it does not provide substantial evidence that the crime committed was involuntary manslaughter.

Because there was no evidence from which a rational trier of fact could find beyond a reasonable doubt that the crime committed was involuntary manslaughter, the trial court did not err when it failed to instruct on involuntary manslaughter.

In any event, any error was harmless because there is no probability that the error affected the verdict. (*People v. Breverman* (1998) 19 Cal.4th 142, 165.)

The jury was properly instructed on first degree murder and found that the killings were intentional, premeditated and deliberate. If the jury had found that

the killing was not intentional, it would have found defendant guilty of second degree murder committed with implied malice. Having been given the choice between an intentional killing and an unintentional killing, the jury found intent to kill. Having found intent to kill, the jury would not have found involuntary manslaughter.

**Instruction Stating That Intent to Kill Is Required for Voluntary Manslaughter**

The jury was instructed on the lesser included offense of voluntary manslaughter occurring during a sudden quarrel or in the heat of passion. The instruction stated that voluntary manslaughter required an intent to kill.

During the pendency of this appeal, the California Supreme Court held intent to kill is not a necessary element of voluntary manslaughter. (*People v. Lasko* (2000) 23 Cal.4th 101.) Coleman filed a supplemental brief claiming she was prejudiced by the erroneous voluntary manslaughter instruction. Loera did not file a separate supplemental brief, but joined in the brief filed by Coleman.[9]

---

[9]  The argument that Lasko should not be retroactive has not been raised here by the Attorney General. Such an argument was rejected recently by *People v. Crowe* (2001) 87 Cal.App.4th 86.

---

In *Lasko*, defendant Lasko killed his victim by beating him with a baseball bat. His defense was that he had gotten into an argument with the victim and the victim struck him with the baseball bat first. There was evidence that the defendant had previously threatened to kill the victim. The defendant was charged with first degree rnurder and a robbery special circumstance. The jury was instructed on first degree murder, second degree murder, voluntary manslaughter, and involuntary manslaughter. The defendant was convicted of second degree murder. After finding that the trial court erred in instructing the jury that voluntary manslaughter required an intent to kill, the Supreme Court found the error was not prejudicial.

The Supreme Court set forth the standard of review for instructional error: "'[I]n a noncapital case, error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under [*People v.* ] (*sic*) *Watson* [(1956) 46 Cal.2d 818, 836 ...]. A conviction of the charged offense may be reversed in consequence of this form of error only if, "after an examination of the entire cause, including the evidence" (Cal. Const., art. VI, § 13), it appears "reasonably probable" the defendant would have obtained a more favorable outcome had the error not occurred (*Watson*, supra, 46 Cal.2d 818,836).' [Citation.]" (People *v.* Lasko, supra, 23 Cal.4th at p. 111.)

In assessing prejudice, the Supreme Court first noted that CALJIC No. 8.50 was read to the jury and stated in part: "'When the act causing the death, though unlawful, is done in the heat of passion or is excited by a sudden quarrel such as it amounts to provocation . . . the offense is manslaughter. In such a case, even if an intent to kill exists, the law is that malice, which is an essential element of murder, is absent. [¶] To establish that a killing is murder . . . and not manslaughter, the burden is on the People to prove beyond a reasonable doubt each of the elements of murder and that the act which caused the death was not done in the heat of passion or upon a sudden quarrel . . ..'" (*People v. Lasko, supra*, 23 Cal.4th at p. 112.)[10]

---

[10]  This same instruction was given here.

---

Because the instruction in *Lasko* required the People to prove that the defendant was not acting under the heat of passion before a murder conviction could be rendered, the Supreme Court concluded that the jury could not have convicted defendant of murder if they believed that the defendant unintentionally killed the victim in the heat of passion and would have most likely convicted defendant of involuntary manslaughter, on which the jury was instructed. Because the jury convicted defendant of second degree murder, the verdict showed that the jury did not believe the killing was committed in the heat of passion.

The Supreme Court pointed out that at trial the subject of voluntary manslaughter did not figure prominently in either party's argument. The Supreme Court found there was strong evidence suggesting an intent to kill. Based on all the above, the Supreme Court found, "[i] t is not reasonably probable that a properly instructed jury would have convicted defendant of the lesser offense of voluntary manslaughter." (*People v. Lasko, supra*, 23 Cal.4th at p. 113.)

Coleman attempts to distinguish the prejudice here from the prejudice in *Lasko*, relying mainly on two factors: (1) the instructions on involuntary manslaughter were not given here; and (2) the arguments of counsel focused extensively on voluntary manslaughter. Although *Lasko* is distinguishable, there are other distinctions that demonstrate Coleman has not been prejudiced.

The jury here returned a verdict of first degree premeditated and deliberated murder. In *Lasko*, the defendant was convicted of second degree murder. Thus it was not clear in Lasko that the jury found the killing to be intentional. The first degree murder conviction here clearly shows that the jury found intent to kill. Coleman argues that if the jury found no malice and no intent to kill, they would have been forced to reject voluntary manslaughter and to convict her of murder or acquit her entirely. If the jury here had believed that the killing of Meza was unintentional, they would not have returned a first degree murder verdict but most likely would have returned a second degree murder

verdict. The first degree murder verdict clearly demonstrates that the jury did not believe the killing was unintentional. Since the jury clearly rejected the theory of an unintentional killing by virtue of their choice to convict Coleman of first degree murder and not second degree murder, the failure to instruct that voluntary manslaughter could be based on an unintentional killing could not have prejudiced Coleman here.[11]

---

[11]  This prejudice analysis was unavailable to the *Lasko* court because the defendant in *Lasko* was convicted of second degree murder. The analysis of prejudice in *Lasko* therefore proceeded on a different basis. This did not alter the clear showing in this case that the instructional error was not prejudicial. The recent case of *People v. Crowe, supra*, 87 Cal.App.4th 86 found no prejudice based on *Lasko* error. The defendant in *Crowe* was convicted of second degree murder, thus the above first degree murder analysis of no prejudice was also unavailable in *Crowe*.

---

The critical threshold issue raised by the Respondent and unaddressed by Petitioner is whether Claim 2 presents a federal question.  While it is true that due process and the Sixth Amendment to the Constitution require that a jury be correctly instructed as to every element of the crime with which a defendant is charged and convicted, *see United States v. Gaudin*, 515 U.S. 506, 522–23 (1995), that is not the issue before this Court.  The issue before this Court is whether due process requires that a jury in a criminal trial be instructed at all or correctly instructed as to all necessarily included lesser offenses.  First, Supreme Court precedent does not require a trial court to instruct the jury on a lesser included offense in a non-capital case, *Beck v. Alabama,* 447 U.S. 625, 638 (1980), and the Ninth Circuit has concluded that such a claim is not cognizable on federal habeas review. *Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir.2000); *see also* 28 U.S.C. § 2254(d)(1); *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir.2004) ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.").  It follows, *a fortiori*, that if a failure to instruct on lesser included charges at all does not present a federal issue, a failure to instruct on them correctly also does not present a federal issue.

Second, the California Court of Appeal, compelled as it was to follow the decision of the California Supreme Court, applied the California rule under *People v. Watson*, not the federal standard under *Chapman v. California*, 386 U.S. 18 (1967).  Thus, the question becomes whether

*Lasko*, was decided solely under principles of state law or whether it was intertwined with a federal issue.  If *Lasko* was decided solely under California law, no federal question is presented and review of state law questions is beyond the purview of this Court.

It is clear from the opinion in *Lasko* that it decided the question of propriety of the instruction in question solely under California law.[3/]  *See also People v. Breverman*, 960 P.2d 1094, 1108 (1998) (holding that the failure to instruct on a lesser included offense in a noncapital case is, at most, an error of California law alone subject only to state standards of reversibility). When state standards alone have been violated and no federal constitutional violation appears, the State is free to apply its own state harmless-error rule to those violations without review by a federal court. *Cooper v. State of California*, 386 U.S. 58, 62 (1967).

This Court can not say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Nor can this Court find that the California Court of Appeal unreasonably applied the correct legal principle to the facts of the prisoner's case as required by *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Petitioner is not entitled to relief under Claim 2.

Claim 3 (Improper instruction on burden of proof).

Evidence was introduced that Petitioner had been seen selling drugs prior to the incident of which she was convicted.  Although Petitioner was not charged with the sale of drugs, the evidence was admitted for the limited purpose of showing intent, a necessary element of crime of which she was charged: murder.  Petitioner challenges the instructions given as allowing the jury to find that she committed other uncharged crimes by a preponderance of the evidence, not beyond a reasonable doubt.

The California Court of Appeal in rejecting Petitioner's arguments held:

---

[3/] The defendant in *Lasko* did raise federal constitutional issues of denial of a trial by jury and due process based on the dissenting opinion in *Breverman*.  The California Supreme Court summarily rejected Defendant's argument without discussion, instead relying solely upon its interpretation of the requirements of California law.

**Instruction on Other-Crimes Evidence**

There was evidence presented that Coleman sold methamphetamine. The jury was instructed on how to view other-crimes evidence as follows: "Evidence has been introduced for the purpose of showing that the defendants committed a crime or crimes other than that for which he or she is on trial. [¶] This evidence, if believed, may not be considered by you to prove that any defendant is a person of bad character or that he or she has a disposition to commit crimes. It may be considered by you only for the limited purpose of determining if it tends to show: [¶] The existence of the intent which is a necessary element of the crime charged; [¶] The identity of the person who committed the crime, if any, of which the defendant is accused; [¶] A motive for the commission of the crime charged; [¶] for the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in the case." (CALJIC No. 2.50 (1988 rev.).)

The jury was also instructed that it had to determine if Barbosa was an accomplice and that the People had the burden of proving Barbosa was an accomplice by a preponderance of the evidence. (CALJIC No. 3.19.) Immediately following this instruction was a definition of preponderance of the evidence. (CALJIC No. 2.50.2.) The jury was given the standard reasonable doubt instructions.

Coleman claims that the instruction on how to view other crimes, which directed the jury to weigh the evidence in the same manner as all other evidence in the case, was ambiguous and misleading because the jury had been given two standards of proof—proof beyond a reasonable doubt and proof by a preponderance of the evidence.

The jury was read CALJIC No. 2.90, the standard reasonable doubt instruction. Of greater importance to the issue raised here is CALJIC No. 2.01, the instruction on how to judge circumstantial evidence. It was read to the jury as follows:

"However, a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion.

"Further, *each fact* which is essential to complete a set of circumstances necessary to establish the defendant's guilt *must be proved beyond a reasonable doubt.* In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, *each fact or circumstance on which the inference necessarily rests must be proved beyond a reasonable doubt.*

"Also, if the circumstantial evidence permits two reasonable interpretations, one of which points to the defendant's guilt and the other to his or her innocence, you must adopt that interpretation that points to the defendant's innocence, and reject that interpretation that points to his or her guilt.

"If, on the other hand, one interpretation of this evidence appears to you to be reasonable and the other interpretation unreasonable, you must accept the reasonable interperation [*sic*] and reject the unreasonable." (CALJIC No. 2.01, italics added.)

Other-crimes evidence by its very nature is circumstantial evidence. It is utilized to show indirectly the facts sought to be proved. It establishes inferences. The circumstantial evidence instruction explicitly requires each fact upon which an inference rests must be proved beyond a reasonable doubt, and each inference must be proved beyond a reasonable doubt. It is presumed that the jurors followed the instructions as given. (*People v. Osband* (1996) 13 Cal.4th 622,714.) The instructions were not ambiguous or misleading and did not undercut the state's burden of proof.

As noted above in the discussion on Claim 1, the standard for evaluating the adequacy of instructions is the same under California Law as it is under federal law.  It is well established that not only must the challenged instruction be erroneous but it must violate some constitutional right and may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Estelle v. McGuire*, 502 U.S. at 72.  This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" very narrowly. *Id*., 502 U.S. at 72–73.  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id.*

Of particular import to the present case is that an earlier version of CALJIC 2.50 was at issue in *Estelle*, albeit in a different context.  What is important is that the Supreme Court, applying the principles it enunciated, not only rejected a challenge to CALJIC 2.50 but firmly reminded lower federal courts of the limited scope of federal habeas review of state convictions.

The Court is not unmindful of and has considered the decision of the Ninth Circuit in *Gibson v. Ortiz*, 387 F.3d 812, 822–23 (9th Cir.2004) in which the panel held that CALJIC

2.50.01[4] used in conjunction with CALJIC 2.50.1[5] is directly contrary to the requirement that a defendant may not be convicted except "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged" citing *In re Winship*, 397 U.S. 358, 364 (1970).  Neither the finding nor the rationale underlying *Gibson* apply in this case.  It was clear to the court in *Gibson* that "the interplay of the two instructions allowed the jury to find that Gibson committed the uncharged sexual offenses by a preponderance of the evidence and thus to infer that he had committed the charged acts based upon facts found not beyond a reasonable doubt, but by a preponderance of the evidence." 387 F.3d at 822.  *Gibson* also rejected the argument that, when read as whole, the instructions set forth the reasonable doubt standard, applying the principle that the specific controls the general, stating the jury  "received only a general instruction regarding circumstantial evidence, which required proof beyond a reasonable doubt, and a specific, independent instruction relating to previous sexual abuse and domestic violence, which required only proof by a preponderance of the evidence." 387 F.3d at 823.

Contrast the facts in the case at bar.  First, CALJIC 2.50.1 was not given.  Second, the complained of "preponderance of the evidence" instruction, CALJIC 2.50.2, was given immediately after CALJIC 3.19, which as given, stated: "The defendant has the burden of proving by the preponderance of the evidence that Manuel Barbosa was an accomplice in the crime charged."  While the Court agrees with Petitioner that the jury was given two different standards of the burden of proof, it disagrees that this allowed the jury to convict her on the basis of less than a reasonable doubt.  This Court finds, as did the California Court of Appeal, that when read as a whole and in the proper context, the instructions given clearly and unambiguously required the prosecution to find each element of the crime to be proven by

---

[4] CALJIC 2.50.01 as given: "If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime or crimes of which he is accused."

[5] The instruction as given specifically referenced CALJIC No. 2.50.01 and outlined the applicable burden of proof for the prior sexual offenses: "Within the meaning of the preceding instructions the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed sexual offenses and/or domestic violence other than those for which he is on trial."

evidence beyond a reasonable doubt.  More specifically, the Court rejects Petitioner's argument to the extent that it infers that the jury must be instructed as to the requisite burden of proof of each element of the crime concurrently with the instruction on that element.  In this case, the jury was properly instructed that the requisite burden of proof, *i.e.*, beyond a reasonable doubt, applied to every element of the crime or fact that the prosecution had the burden of proving.  The only instruction that referred to the preponderance of the evidence standard was an instruction relating to burden of proof imposed on the defendant as to a single issue—whether a person was an accomplice.  The trial judge gave the instruction defining preponderance of the evidence in connection with this instruction.  Unlike the situation in *Gibson*, the specific instruction here went to the burden of proof imposed on the defendant, not the burden imposed on the prosecution.  Consequently, it did not conflict with the general instructions governing the burden of proof imposed on the government.  That there is a reasonable likelihood that the jury understood the instructions in this case to allow it to convict on a basis of proof less than a reasonable doubt is, while, perhaps theoretically possible, sheer speculation.[6]

This Court can not say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Nor can this Court find that the California Court of Appeal unreasonably applied the correct legal principle to the facts of the prisoner's case as required by *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Petitioner is not entitled to relief under Claim 3.

/

/

---

[6] Petitioner also argues that the evidence of uncharged crimes was inadmissible under FED. R. EVID. 404.  Suffice it to say that the United States Supreme Court has never held that the introduction of evidence contrary to the requirements of the Federal Rules of Evidence ever was sufficient to warrant reversing a conviction in state court.  Likewise, the Court does not reach the question of whether the uncorroborated testimony on the uncharged crimes was sufficient.  It was strictly within the province of the jury, not this Court on a petition for habeas relief, to determine credibility and weigh the evidence.

MEMORANDUM DECISION
*Coleman v. Mitchell*, No. 1:02-cv-6282-JKS

Claim 4 (shackling).

Petitioner argues that the failure to remove her leg shackles denied her a fair and impartial trial under *Illinois v. Allen*, 397 U.S. 337 (1970).  Respondent argues that Petitioner has waived the claim by her failure to object to the shackling.  In agreeing with the State on appeal and rejecting that claim, the California Court of Appeal held:

### Shackling of Coleman

Prior to jury voir dire counsel for Coleman asked that Coleman's handcuffs and waist chains be removed while jurors were present. The trial court granted the motion and then asked the bailiff if there were any security concerns. The bailiff said no.

The following morning, Coleman's counsel stated: "I believe we had previously made a motion to unhandcuff the defendants prior to the jury coming in." The trial court ordered that defendants be unhandcuffed and no restraints be visible to the jury. Before the prospective jurors were brought in, the following occurred:

"MR. LOSTRACCO [Counsel for Coleman]: Your Honor, I'm a little concerned. I'm looking at Ms. Coleman from back in this area and her shackles, chain and cuffs on her feet, are plainly visible from this area here.

"THE COURT: And for the record, you're standing out in the audience portion of the courtroom.

"MR. LOSTRACCO: Yes. I don't know how we want to deal with that. I don't know if there's any way to block that view.

"THE COURT: We could slightly angle the table, or is the chain across there as far back as it can go?

"Are those wrapped to prevent noise?

"MR. LOSTRACCO: No, they're not.

"THE COURT: Let's — we'll take a few moments to one, have them have a wrapped set so they are not as visible and do not make noise and I believe the line underneath the counsel table should be far enough back that it — where people are sitting they would not be obvious.

" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

'Defense side of counsel table can be brought maybe two or three feet toward the front toward this side of the courtroom.

"Now with the angle, can you see from that angle underneath the table, whereas now there's a gap?

MEMORANDUM DECISION
*Coleman v. Mitchell*, No. 1:02-cv-6282-JKS                18

"MR. LOSTRACCO: Just sitting here normally I can plainly see her feet. We may just have to — I believe I put it in my instructions request, not to draw any inference from the defendants being restrained.

"THE COURT: In the voir dire process do you wish me to mention anything about whether or not the — either or both of the defendants are in custody?

"MR. LOSTRACCO: It's going to be pretty obvious.

"MR. THOMAS [Counsel for Loera]: Once they understand the case they're going to make an assumption, I think.

"MR. LOSTRACCO: You're not going to see them walking in and out of the courtroom.

"THE COURT: I will [tailor] the voir dire process concerning [custodial] status."

The jury was instructed not to consider for any purpose that physical restraints had been placed on the defendants.

Requiring a defendant to appear before the jury under physical restraints may impair the right to a fair trial. "Visible physical restraints should not be ordered in the absence of 'evident necessity' or 'manifest need,' and indeed, '[t]he imposition of physical restraints in the absence of a record showing of violence or a threat of violence or other nonconforming conduct will be deemed to constitute an abuse of discretion.' [Citation.]" (*People v. Jenkins* (2000) 22 Cal.4th 900, 995.)

Coleman claims the trial court violated her rights to counsel and due process by restraining her in chains without a showing of need or consideration of less restrictive alternatives. She asserts that the shackles painted her as a violent person in the jury's eyes, and additionally confused and embarrassed her mental faculties so she could not participate in her own defense.

"It is settled that the use of physical restraints in the trial court cannot be challenged for the first time on appeal." (People v. Tuilaepa (1992) 4 Cal.4th 569, 583.)

Coleman's counsel objected to the handcuffs and waist chains at trial. The trial court ordered that these be removed. There was no objection to the use of restraints placed on her feet. Coleman has therefore waived any claim that the restraints were not necessary.

Coleman's counsel did express concern that the foot shackles were visible to the jury. The trial court rearranged the tables to minimize the viewing of the shackles. Coleman's counsel said that Coleman's feet could still be seen and at the same time mentioned that he requested an instruction to not draw any inference

from the restraints. Coleman did not ask for removal of the restraints or any other accommodations to hide the restraints. Counsel appeared satisfied with the situation and by his statements directly implied that he believed the jurors would know that Coleman was in custody regardless of the restraints. Counsel did not voice a concern that Coleman would be viewed as violent because of the restraints. Nor did Coleman at any time indicate that the shackles embarrassed her mental faculties so she could not participate in her own defense.

Defense counsel failed to make an objection to the leg restraints and suggested that the instruction be given even though the record does not reflect whether any of the jurors saw the restraints. The actions of Coleman's defense counsel cannot be viewed as an objection to the procedures employed. Coleman has waived the issue.

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).  This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims * * *." *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).  In this case Petitioner clearly procedurally defaulted in state court on Claim 4.

In *Estelle v. Williams*, 425 U.S. 501 (1976), the U.S. Supreme Court held that "although the State cannot, consistent with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." 525 U.S. at 512–13.  The Court can discern no principled reason not to apply *Estelle* to restraints as well. *See King v. Rowland*, 977 F.2d 1354, 1357 (9th Cir.1991) ("Ordinarily, the fact that King failed to raise an objection to the restraints would constitute a waiver on the issue.").[7]

_____

[7] Not only did Petitioner fail to object, but counsel, without any objections by Petitioner, affirmatively consented to the remedial measures suggested by the Court with respect to the leg shackles and gave a curative instruction requested by counsel that it must be presumed the jury followed. Moreover, although there is evidence in the record that the shackles were visible from the spectators section, there is no evidence in the record that the shackles were visible from the jury box.  *See United States v. Collins*, 109 F.3d 1413, 1418 (9th Cir.1997) (concluding that because there was no evidence that the jury was aware of the restraints, there was no prejudice).

This Court can not say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Nor can this Court find that the California Court of Appeal unreasonably applied the correct legal principle to the facts of the prisoner's case as required by *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Petitioner is not entitled to relief under Claim 4.

Accordingly, because Petitioner is not entitled to relief under any claim asserted,

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks omitted)).  All federal constitutional issues properly raised in the petition were either addressed by the California Court of Appeal in its decision, and no reasonable jurist could find that the decision was "objectively unreasonable."

The Clerk of the Court shall enter final judgment accordingly.

Dated:  March 28, 2007.

s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge